```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA

 4            v.                          14 Cr. 272 (JSR)

 5   PAUL ROBSON,
                                          Plea
 6                   Defendant.

 7   ------------------------------x

 8                                        New York, N.Y.
                                          August 18, 2014
 9                                        2:10 p.m.

10   Before:

11           HON. JED S. RAKOFF

12                                        District Judge

13

14

15           APPEARANCES

16

     BRIAN YOUNG
17   CAROL SIPPERLY
     MICHAEL T. KOENIG
18        Attoreys for U.S. Department of Justice

19

     JUSTIN S. WEDDLE
20   LARA N. JENSEN
          Attorneys for Defendant
21

22   MICHAEL WEEKS
          Special Agent – FBI
23

24

25
```

1          (Case called)

2          MR. YOUNG:  Good afternoon, your Honor.  Brian Young,

3  Department of Justice fraud section, for the United States,

4  together with Carol Sipperly from the fraud section, Michael

5  Koenig from the antitrust section, and FBI Agent Jeffrey Weeks.

6          MR. WEDDLE:  Good afternoon, your Honor.  Justin

7  Weddle, with the firm Brown Rudnick, for the defendant Paul

8  Robson, who is sitting next to me.  My colleague Laura Jensen

9  is also sitting next to me.

10         THE COURT:  Good afternoon.  My understanding is that

11  the defendant wishes to enter a plea of guilty to Count One of

12  indictment 14 Cr. 272.  Is that correct?

13         MR. WEDDLE:  That's correct, your Honor.

14         THE COURT:  We will place the defendant under oath.

15         (Defendant sworn)

16         THE CLERK:  Please state your name.

17         THE DEFENDANT:  Paul Robson.

18         THE CLERK:  Please spell your last name slowly.

19         THE DEFENDANT:  R-O-B-S-O-N.

20         THE CLERK:  Please be seated.

21         THE COURT:  Mr. Robson, let me first advise you that

22  because you are under oath, anything that you say that is

23  knowingly false could subject you to punishment for perjury or

24  obstruction of justice or the making of false statements.  Do

25  you understand?

```
 1                THE DEFENDANT:  I understand, your Honor.

 2                THE COURT:  Do you read, write, speak, and understand

 3    English?

 4                THE DEFENDANT:  Yes, your Honor.

 5                THE COURT:  You are from England, is that right?

 6                THE DEFENDANT:  Yes, your Honor.

 7                THE COURT:  Are you a UK citizen?

 8                THE DEFENDANT:  Yes, your Honor.

 9                THE COURT:  How old are you?

10                THE DEFENDANT:  45, your Honor.

11                THE COURT:  How far did you go in school?

12                THE DEFENDANT:  I went up to the equivalent of high

13    school, your Honor.

14                THE COURT:  Are you single or married?

15                THE DEFENDANT:  I'm married.

16                THE COURT:  Any children?

17                THE DEFENDANT:  One daughter.

18                THE COURT:  Have you ever been treated by a

19    psychiatrist or psychologist?

20                THE DEFENDANT:  Yes, your Honor.

21                THE COURT:  Is that ongoing now?

22                THE DEFENDANT:  It was up until about a month ago.  I

23    was receiving counseling, your Honor.

24                THE COURT:  Was that for depression?

25                THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Have you ever been hospitalized for any

2    mental illness?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Have you ever been treated or hospitalized

5    for alcoholism?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Have you ever been treated or hospitalized

8    for narcotics addiction?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Are you currently under the care of a

11    physician for any reason?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  My understanding from the pretrial

14    services report is you were previously taking a Prozac-like

15    medicine.  Is that still the case?

16          THE DEFENDANT:  No, your Honor.  I stopped taking

17    that.

18          THE COURT:  Are you currently taking any kind of

19    prescription medicine?

20          THE DEFENDANT:  No, your Honor.

21          THE COURT:  In the last 24 hours have you taken any

22    narcotic?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  In the last 24 hours have taken any

25    alcohol?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Is your mind clear today?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand these proceedings?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  On the basis of the defendant's responses

7    to my questions and my observations of his demeanor, I find

8    that he is fully competent to enter a plea at this time.

9          Mr. Robson, you have a right to be represented by

10   counsel at every stage of these proceedings, do you understand

11   that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  If at any time you can't afford counsel,

14   the Court will appoint you counsel for you free of charge to

15   represent you throughout the proceedings.  Do you understand

16   that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  You are represented by Mr. Weddle.  Are

19   you satisfied with his representation?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Have you had a full opportunity to discuss

22   this matter with him?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Have you told him everything you know

25   about this matter?

1         THE DEFENDANT:  Yes, your Honor.

2         THE COURT:  You are named in indictment 14 Cr. 272,

3    which charges you both with conspiracy and wire fraud and

4    aiding and abetting.  You have read that indictment, yes?

5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  You have gone over it with your counsel?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  You have a right to go to trial on that

9    indictment, but I understand you wish to plead guilty instead,

10   is that correct?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Before I can accept any plea of guilty, I

13   need to make certain, among other things, that you understand

14   the rights that you will be giving up if you plead guilty.  I

15   want to go over with you now the rights that you will be giving

16   up.  Do you understand?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  First, you have a right to a speedy and

19   public trial by a jury on the charges against you.  Do you

20   understand that?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  Second, if there were a trial, you would

23   be presumed innocent and the government would be required to

24   prove your guilt beyond a reasonable doubt before you could be

25   convicted of any charge.  Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Third, at the trial you would have the

3     right to be represented by counsel.  Once again, if at any time

4     you could not afford counsel, the Court would appoint one to

5     represent you free of charge throughout the trial and all other

6     proceedings.  Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Fourth, at the trial you would have the

9     right to see and hear all the witnesses and other evidence

10    against you, and your attorney could cross-examine the

11    government's witnesses and object to the government's evidence,

12    and could present evidence on your own behalf if you so

13    desired, and could have subpoenas issued to compel the

14    attendance of witnesses and the production of evidence on your

15    own behalf.  Do you understand all that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Fifth, at a trial you would have the right

18    to testify if you wanted to, but no one could force you the

19    testify if you did not want to.  No suggestion of guilt could

20    be drawn against you simply because you chose not to testify.

21    Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Finally, even if you were convicted of one

24    or more counts, you would have the right to appeal your

25    conviction, do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Mr. Robson, do you understand that if you

3    plead guilty, you will be giving up each and every one of the

4    rights we just discussed.  Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  The charge in Count One is a conspiracy to

7    commit wire fraud and bank fraud.  It carries a maximum

8    sentence of 30 years' imprisonment plus up to 5 years'

9    supervised release and a maximum fine of $1 million.  Do you

10   understand those are the maximum penalties you would pay if you

11   plead guilty to Count One?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Also, do you understand that if I were to

14   impose a term of supervised release to follow any imprisonment

15   and you were to violate any of the conditions of supervised

16   release, that could subject you to still further imprisonment,

17   going even beyond the term of supervised release?  Do you

18   understand that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  At this point in time I have absolutely no

21   idea what sentence I will impose if I accept your plea of

22   guilty, but I have been furnished with a letter agreement that

23   we will now mark the original of as Court Exhibit 1.  It takes

24   the form of a letter dated August 5, 2014, from the government

25   to your counsel, and it appears, Mr. Robson, that you signed it

1    earlier today.  Is that correct?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Before signing it, did you read it?

4            THE DEFENDANT:  Yes, I did, your Honor.

5            THE COURT:  Did you discuss it with your lawyer?

6            THE DEFENDANT:  Yes, I did.

7            THE COURT:  Did you understand its terms?

8            THE DEFENDANT:  Yes, I did, your Honor.

9            THE COURT:  Did you sign it in order to indicate your

10   agreement with its terms?

11           THE DEFENDANT:  Yes, I did, your Honor.

12           THE COURT:  This letter agreement that we have now

13   marked as Court Exhibit 1 is binding between you and the

14   government, but it is not binding on me.  It is not binding on

15   the Court.  Do you understand that?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  For example, this letter agreement says

18   that if you cooperate with the government and render in their

19   view substantial assistance, they will make a motion to me to

20   have your sentence reduced.  Do you understand that is their

21   promise to you?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  If they make that motion, I may grant it

24   or I may deny it.  And even if I grant it, I may reduce your

25   sentence or I may not reduce your sentence.  Regardless of

1    where I come out, if you plead guilty, you will still be bound

2    by my sentence. Do you understand?

3            THE DEFENDANT: Yes, your Honor.

4            THE COURT: More generally, do you understand that if

5    anyone has made any kind of promises or predictions or

6    estimates or representations to you of what your sentence will

7    be in this case, that person could be wrong; nevertheless, if

8    you plead guilty you will be bound by my sentence. Do you

9    understand that?

10           THE DEFENDANT: Yes, your Honor.

11           THE COURT: Does the government represent that this

12   letter agreement that we have now marked as Court Exhibit 1 is

13   the entirety of any and all agreements between the United

14   States and Mr. Robson?

15           MR. YOUNG: Yes, we do, your Honor.

16           THE COURT: Does defense counsel confirm that as

17   correct?

18           MR. WEDDLE: Yes, your Honor.

19           THE COURT: Mr. Robson, do you confirm it is correct?

20           THE DEFENDANT: Yes, your Honor.

21           THE COURT: Mr. Robson, other than the government, has

22   anyone else made any kind of promise to you or offered you any

23   inducement to get you to plead guilty?

24           THE DEFENDANT: No, your Honor.

25           THE COURT: Has anyone threatened or coerced you in

1    any way to get you to plead guilty?

2              MR. YOUNG:  No, your Honor.

3              THE COURT:  Does the government represent that if this

4    case were to go to trial, it could through competent evidence

5    prove every essential element of Count One beyond a reasonable

6    doubt?

7              MR. YOUNG:  Yes, we do, your Honor.

8              THE COURT:  Does defense counsel know of any valid

9    defense that would likely prevail at trial or any other reason

10   why his client should not plead guilty?

11             MR. WEDDLE:  No, your Honor.

12             THE COURT:  Mr. Robson, tell me in your own words what

13   it is that you did makes you guilty of this offense.

14             MR. WEDDLE:  With the Court's permission, Mr. Robson

15   has prepared a written version of his allocution.  May he read

16   from that?

17             THE COURT:  If I said no, I would be creating a

18   precedent that would cast fear and terror into the hearts of

19   all government and criminal defense counsel from time

20   immemorial.  So I guess I'm obliged to say yes, he may read it.

21             MR. WEDDLE:  Thank you, your Honor.

22             THE DEFENDANT:  I worked at Rabobank on various

23   currencies --

24             THE COURT:  Slow down.

25             THE DEFENDANT:  Sorry.  I worked at Rabobank on

various currencies as a money market dealer from approximately

October 1990 through October 2008.  From approximately 2004

until I left Rabobank in 2008, I was Rabobank's primary yen

LIBOR submitter to the British Bankers Association.  I

understand that Rabobank yen LIBOR submissions were supposed to

accurately reflect the rate at which Rabobank could borrow yen

in the London interbank market on a particular day.

          Beginning no later than 2006 and continuing until

October 2008, working together with others, I tailored the yen

LIBOR submissions I made on behalf of Rabobank in order to

profit the bank's position.

          For example, I received requests from Mr. Thompson,

Mr. Motomura, and Mr. Yagami to make particular submissions or

to move my submissions in a particular direction in order to

benefit their trading positions, and I complied with those

requests.  I also conveyed some of these requests to a

submitter at another bank and requested that he match the way

in which I made my submissions, and I in turn reciprocated

these actions with him.

          I tailored my submissions in this way at the direction

of my supervisor.  The way I sent yen submissions was also

modeled on the way that others at the bank set the bank's U.S.

dollar submissions.  When I tailored my submissions in this

manner, I understood the parties taking opposing trading

positions could be negatively affected, and I knew that some of

1   these parties that could be affected were American financial

2   institutions.

3        Rabobank's submissions were transmitted by wire to

4   Thomson Reuters and were published electronically worldwide.

5   In addition, it was foreseeable to me that payments that were

6   linked to LIBOR were transmitted by wire between financial

7   centers worldwide, including New York.

8        When I made these submissions designed to favor the

9   bank's trading positions, I knew that it was wrong to do so.

10       THE COURT:  In addition to knowing that it was wrong

11  to do so, you realized, did you not, that your scheme would

12  cause harm to those who were not aware of the way in which the

13  rate was being manipulated, correct?

14       THE DEFENDANT:  Yes, your Honor.

15       THE COURT:  Is there anything else regarding the

16  factual portion of the allocution that the government wishes

17  the Court to inquire about?

18       MR. YOUNG:  Your Honor, we would prove that at least

19  one of the financial institutions that was affected was insured

20  by the Federal Deposit Insurance Corporation.

21       THE COURT:  Very good.  Anything else?

22       MR. YOUNG:  No, your Honor.

23       THE COURT:  Is there anything else regarding any

24  aspect of the allocution that either counsel wishes the Court

25  to inquire further about before I ask the defendant to formally

```
 1   enter his plea?  Anything else from the government?

 2              MR. YOUNG:  Your Honor, this doesn't pertain to the

 3   allocution, but the statute also contains a $100 special

 4   assessment.

 5              THE COURT:  Yes.  Thank you for reminding me of that.

 6   The penalty also includes a $100 special assessment.  Do you

 7   understand that?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  That is mandatory.  Also, do you

10   understand that because you are not an American citizen, you

11   would face deportation from the United States following any

12   prison time that the Court might impose?  Do you understand

13   that?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Anything else from the government?

16              MR. YOUNG:  No, your Honor.

17              THE COURT:  My courtroom deputy wants me to ask, I

18   think this is correct, the defendant was previously arraigned,

19   yes?  Or not?  No, he was not previously arraigned.

20              I think we have covered everything that would have

21   been covered by an arraignment in the allocution, so I don't

22   think anything further is necessary.  He has already indicated

23   he has read the indictment.  Do you waive the public reading?

24   Does the defendant waive the public reading?

25              MR. WEDDLE:  Yes, we waive the public reading, your
```

1    Honor.

2           THE COURT:  He obviously is aware of his right to

3    counsel and all of his various rights because we went over that

4    as part of the allocution.  So, I think we have covered

5    everything that would be covered in an arraignment.  But thank

6    you, I'm glad that was brought to my attention.

7           Is there anything else along those lines that either

8    counsel wishes to raise?

9           MR. YOUNG:  No, your Honor.

10          THE COURT:  Anything from the defense?

11          MR. WEDDLE:  No, your Honor.

12          THE COURT:  Mr. Robson, in light of everything we have

13   now discussed, how do you now plead to Count One of indictment

14   14 Cr. 272, guilty or not guilty?

15          THE DEFENDANT:  Guilty, your Honor.

16          THE COURT:  Because the defendant has acknowledged his

17   guilt as charged, because he has shown that he understands his

18   rights, and because his plea is entered knowingly and

19   voluntarily and is supported by an independent basis in fact

20   containing each of the essential elements of Count One, I

21   accept his plea and adjudge him guilty of Count One of

22   indictment 14 Cr. 272.

23          Now, Mr. Robson, the next stage in this process is

24   that you will be given a substantial period of time to assist

25   the government pursuant to your agreement.  Then there will

 1   come a time no later than a date that we are about to set when

 2   you will be sentenced.  A few months before that date, the

 3   probation office will begin preparing what is called a

 4   pre-sentence report to assist the Court in determining

 5   sentence.

 6          As part of that, you will be interviewed by the

 7   probation officer.  You can have your counsel present to advise

 8   you of your rights, but under my practices if you want to

 9   qualify for the full credit of acceptance of responsibility,

10   you personally need answer any and all questions put to you by

11   the probation officer.  Do you understand?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  After that report is in draft form but

14   before it is in final form, you and your counsel and also

15   government counsel will have a chance to review the draft and

16   to offer suggestions, corrections, and additions directly to

17   the probation officer, who will then prepare the report in

18   final to come to me.

19          Independent of that, counsel for both sides are hereby

20   authorized to submit and file with the Court any motion or

21   other materials bearing on any aspect of sentence provided they

22   are submitted and filed no later than one week before sentence.

23          I understand the suggestion is to put the sentence

24   down for the same at it as the co-defendant who previously

25   entered a plea.  Is that correct?

```
 1              MR. YOUNG:  Yes, your Honor.

 2              THE COURT:  That date, remind me.  I know it was right

 3   around the corner.

 4              MR. YOUNG:  I have June 9, 2017.

 5              THE COURT:  Assuming you are still free, we will set

 6   it down for June 9th, 2017 at 4 p.m.

 7              MR. YOUNG:  My calendar is open that day.

 8              THE COURT:  What is the story on bail?

 9              MR. YOUNG:  Your Honor, we have talked to Mr. Weddle.

10   We would like to propose a joint agreed bond package.

11              THE COURT:  Go ahead.

12              MR. YOUNG:  We would like to propose that Mr. Robson

13   be released to reside back in the United Kingdom on a $500,000

14   bond that he is going to secure with $90,000 in cash.  He is

15   permitted to keep his travel documents because he needs to

16   return to the United Kingdom.  He would be permitted to travel

17   internationally to the following places if he asks to do that.

18   That would include the United States, France, Spain, Portugal,

19   Germany, Greece, turkey, Thailand, Indonesia, Mexico, South

20   Africa, Australia, and New Zealand.

21              THE COURT:  And, assuming it is no longer part of the

22   UK, Scotland?

23              MR. YOUNG:  Yes, assuming it is no longer part of the

24   UK, I think Scotland would be agreeable.

25              THE COURT:  My understanding was that he would also be
```

1    required to report weekly by email or some other similar

2    electronic method to the pretrial services department.  Yes?

3           MR. YOUNG:  Judge, that is what pretrial is

4    recommending.  That wasn't part of the agreement that I had

5    with Mr. Weddle.  That is a recommendation of pretrial

6    services.

7           THE COURT:  Any objection to it?

8           MR. WEDDLE:  I just don't see any point for it, your

9    Honor.  He is going to be residing in the UK.  He has one

10   location, which is his address in the UK.  He was born in that

11   town.  He lives basically a town over.  The town he lives in is

12   basically a town over from where he was born.

13          THE COURT:  It has been known in this cold cruel world

14   for people to change their mind and become fugitives.  The

15   sooner one finds that out, the better.

16          MR. WEDDLE:  I think I agree with your Honor that

17   there are always possibilities.

18          THE COURT:  What is the harm?  It's one email a week.

19          MR. WEDDLE:  I just think it is totally unnecessary.

20          THE COURT:  In the normal course someone who in his

21   position would not be released on bail at all or would be

22   detained here in the United States because there is no way to

23   otherwise assure his reappearance.  That is made even more a

24   potential problem given the long list of countries that he is

25   permitted to travel to.  It is true it doesn't include Monaco

 1   or Lichtenstein, but not too much else is omitted.  It doesn't

 2   seem to me at all unreasonable that we should be able to have

 3   some check on his whereabouts.

 4          MR. WEDDLE:  Certainly, your Honor.  Let me take a

 5   step back.  In my view, Mr. Robson would be a great candidate,

 6   except for his citizenship, for release on his own

 7   recognizance.  And even with respect to his citizenship, he has

 8   come to the United States voluntarily.  He came voluntarily

 9   today for this proceeding and he has come in the past

10   voluntarily to meet with the government.  He has waived

11   extradition.  He has the entire right to process in the UK

12   which he has waived and decided to come here voluntarily for a

13   guilty plea, which is I think one of the most important events.

14          THE COURT:  Of course all of that cuts in his favor.

15   I wouldn't be considering this package if all of that wasn't

16   true.  He has demonstrated that at present he is going to make

17   himself available.  But we are talking a period of several

18   years, and things can change.  Pressures can be brought.

19          I'm still having trouble with what you view as the

20   burden.  Pretrial services makes two recommendations:  1, to

21   report to pretrial services via weekly Internet check-in.  That

22   on a slow day will probably take him 30 seconds; secondly, to

23   notify pretrial services of any travel and provide a detailed

24   itinerary.  The government presumably could demand that as part

25   of its cooperation agreement if they wanted to.  I'm having

1    real difficulty seeing what the objection is.

2          Let me put it to you this way.  I'm sorry.  Go ahead.

3          MR. WEDDLE:  Sorry, your Honor.  My thought was the

4    entire package that we put together in our discussions with the

5    government --

6          THE COURT:  Oh, my gosh.  Somehow I wasn't invited to

7    this.

8          MR. WEDDLE:  I realize, your Honor.  But it was all

9    entirely modeled on the conditions of release of Mr. Yagami,

10   who was before your Honor.

11         THE COURT:  I didn't have this recommendation before

12   me in his case or I might have imposed the same conditions.

13         MR. WEDDLE:  I agree with you, your Honor, this is a

14   very minor point.  It is likely quite simple for Mr. Robson to

15   comply with it.  But it doesn't seem targeted to the issue that

16   we are dealing with here.  Fundamentally, the thing that is

17   going to make him continue to show up is his agreement with the

18   government.  Today is a day that is bad for him.

19         THE COURT:  The point is really the point I made

20   earlier, which is should he -- and I am reasonably confident

21   this will not come to pass, but it has come to pass in some

22   cases in the past -- should he change his mind and become, in

23   effect, a fugitive, it is useful to find that out sooner rather

24   than later.  Actually these will be only modest checks in that

25   regard, because he can email from anywhere in the world.  But

1    if he were to fail to email, that would set off alarms.  If he

2    were to travel without notification, that would set off alarms.

3              I hear what you are saying.  Let me give you the

4    choice.  You don't have to accept that.  If you would rather

5    have him withdraw his guilty plea, I'm telling you in advance

6    I'm going to, if he wants to continue with his guilty plea,

7    impose those conditions.  But I don't want you to be under any

8    misapprehension.  If you want to withdraw the guilty plea in

9    light of that statement of what I'm about to do, feel free.

10             MR. WEDDLE:  Your Honor, not at all.  It is obviously

11   not an onerous condition, and it pales in comparison to all the

12   other conditions that he has already agreed to.  I just didn't

13   see why it would be imposed on him versus Mr. Yagami.  But, as

14   I have said, it is a tiny additional condition.

15             THE COURT:  I appreciate your eloquent arguments, but

16   I am going to impose those two conditions:  First, to report to

17   pretrial services via weekly Internet check-in, and, second, to

18   notify pretrial services of any travel and provide a detailed

19   itinerary in advance.

20             I'm told also that he needs to, right after this

21   session, report momentarily for a urinalysis in the normal

22   course.  That will need to be done this afternoon.

23             With those additions, the bail package is acceptable

24   to the Court.

25             Where do things stand on the fugitive defendant?

1          MR. YOUNG:  Your Honor, there are two individuals who

2    have been indicted who have not made their initial appearances

3    yet, Mr. Thompson and Mr. Motomura.  We are seeking their

4    extradition.

5          THE COURT:  Where does that stand?

6          MR. YOUNG:  We, the trial team, have submitted to our

7    office of international affairs our paperwork seeking the

8    extradition.  With regard to Mr. Motomura, the office of

9    international affairs has been in contact with the Japanese

10   ministry of justice to discuss the package and to make sure it

11   is acceptable to them.  With regard to Mr. Thompson, it is my

12   understanding that the package is with the office of

13   international affairs.

14         THE COURT:  Where does he reside?

15         THE DEFENDANT:  He is in Australia, your Honor.  Mr.

16   Motomura is in Japan.

17         THE COURT:  Why is this taking so long to get moving?

18         MR. YOUNG:  The office of international affairs tells

19   me that it is a complicated extradition process, that they have

20   a large number of fugitives sought from Australia and the

21   United Kingdom.  The same people in the office of international

22   affairs do both the United Kingdom and Australia.

23         They tell me that they are looking at our package, but

24   they want to make sure it is as appealing as it could be to the

25   authorities in those countries that need to rule on it before

1   we send it over.  By send it over, I mean officially through

2   diplomatic channels as opposed to previewing it to their

3   justice ministries.

4           THE COURT:  Was this not part of one of the, in

5   economic terms, largest frauds in history?

6           MR. YOUNG:  Yes, it is.

7           THE COURT:  Would it be reasonable to expect the

8   office of international affairs to give it some priority?

9           MR. YOUNG:  That would be reasonable to expect, Judge.

10          THE COURT:  But it doesn't appear they are.  They are

11  telling you take your place in the queue.  The office of

12  international affairs is part of the Department of Justice or

13  the Department of State?

14          MR. YOUNG:  Part of the Department of Justice.  The

15  Department of State also has a role to play.  When the package

16  is done at Justice, it gets transmitted by State.

17          THE COURT:  Bureaucracy is a wonderful thing.  I would

18  have thought that someone like Mr. Robson would have a real and

19  genuine interest in moving this process along because his

20  sentence, it could be earlier if anyone requests it, but it is

21  not going to be later than that at it is set.  That date is set

22  in stone.

23          If you tell me, Judge, his cooperation is not

24  completed because the mighty office of international affairs

25  took two years to work out all the niceties of its extradition

1    package and so we are only now getting to trial, I'm going to

2    tell you that you were warned in advance and he was warned in

3    advance that the sentence will occur on that date.

4              MR. YOUNG:  I understand, your Honor.  I didn't want

5    to leave the impression that we are simply in the queue.

6    Office of international affairs is telling me that they are

7    reviewing it, they are looking at it and thinking about it.

8    One event that is important in this time line was the plea of

9    Mr. Yagami, which happened in June.

10             We wanted to be able to tell the countries from which

11   we seek extradition that we have somebody that is prepared to

12   testify.  As a tactical matter, we thought that would make the

13   extradition package more solid.  So, part of the delay is a

14   result of the timing of Mr. Yagami's plea.

15             THE COURT:  Unless things have changed, and I doubt

16   they have, the United States Department of Justice has a long

17   history of never seeking the indictment of anyone that it is

18   not convinced can be proved, by proof available to the

19   government, guilty beyond a reasonable doubt.  Isn't that the

20   policy?

21             MR. YOUNG:  That is the policy, your Honor.

22             THE COURT:  It is nice that you have some cooperators,

23   but you would not have brought the indictment if you didn't

24   think you could prove beyond a reasonable doubt.  So I don't

25   understand what concerns these other countries would have

1    unless they want to ignore 200 years of the best traditions of

2    the United States government.

3            MR. YOUNG:  It was our assessment, Judge, that

4    notwithstanding our practice of never seeking an indictment

5    unless we were sure that we could obtain a conviction,

6    nonetheless the countries that received those packages may view

7    the application as more appealing if we were able to represent

8    that we had a cooperator signed up.

9            THE COURT:  The countries involved are the UK and

10   Japan?

11           MR. YOUNG:  Australia, your Honor.

12           THE COURT:  Australia, I'm sorry, and Japan.  They are

13   not exactly countries that are unfamiliar with U.S. policies

14   and practices, right?

15           MR. YOUNG:  They are not unfamiliar, your Honor.  Your

16   Honor, I would also like to add, as to the Court's inquiry

17   about the process of the case, there is also a chance that we

18   would seek a superseding indictment in light of information

19   that has come to light from our two cooperators.  If that

20   involves other individuals, which is a distinct possibility,

21   the clock would restart from when those individuals are

22   indicted.  Just for the Court's information about the process

23   of the case, I wanted to point that out.

24           THE COURT:  That's all fine and good.  But at the rate

25   you're going -- it is not you personally, obviously -- at the

1    rate the office of international affairs or other people are

2    going, what it sounds like is you will have a paper indictment

3    that will add even more individuals we will never see in our

4    lifetime.  That may be an exaggeration, but maybe not so much

5    an exaggeration.  It is well established that the longer it

6    takes to bring a case to trial, the more difficult finding the

7    truth becomes.  Witnesses forget things.  People disappear.

8    All sorts of things can happen.

9            I just do not understand it.  If this were a small

10   case, that's one thing.  But given the nature of this case and

11   assuming the government's allegations are correct, the need of

12   people throughout the world to see that some justice is done,

13   that that should be delayed because someone in some

14   bureaucratic office is tinkering with making a better package

15   or referring to the many other matters that are on their plate

16   seems to me unpalatable, to say the least.

17           MR. YOUNG:  I can't dispute anything that the Court

18   just said on that score.

19           THE COURT:  Perhaps you will bring those sentiments to

20   the notice of the appropriate authorities.

21           MR. YOUNG:  I'm sure that they will learn about this

22   issue.

23           THE COURT:  Very good.  Anything else we need to take

24   up today?  I'm signing now the bail package and giving it to my

25   courtroom deputy to distribute appropriately.

1              Anything else we need to take up?

2              MR. YOUNG:  No, your Honor.

3              MR. WEDDLE:  No, your Honor.

4              THE COURT:  Very good.  Thanks a lot.

5              (Adjourned)